IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
    Plaintiff,

v.                                                                   Civil Action No. 3:18-cv-667

NAKI CORPORATION d/b/a DAISY
DUKES & BOOTS SALOON,
    Defendant.

## OPINION

The Equal Employment Opportunity Commission ("EEOC") brought this action against NAKI Corporation ("NAKI") for violations of Title VII of the Civil Rights Act of 1964 relating to sexual harassment. The EEOC served NAKI with the complaint and summons on November 30, 2018. After NAKI failed to file responsive pleadings, the EEOC moved for entry of default. Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk entered default on February 26, 2019. The EEOC now moves for default judgment under Rule 55(b).

## I. BACKGROUND

The EEOC alleges that one of NAKI's managers, Jared Spencer, sexually harassed three servers, Michelle Henard, Bridget Todd, and Joan Min, while they worked at NAKI's restaurant known as Daisy Dukes & Boots Saloon ("Daisy Dukes"). Henard worked at Daisy Dukes from November, 2016, until June, 2017. During that time, Spencer frequently commented on Henard's appearance and asked for sexual favors. He often slapped or grabbed her rear end. He cornered Henard in the bar on a day that he was not scheduled to work and later waited for her in the parking lot. On another occasion, she hid from him in a bathroom. Because of Spencer's actions, Henard became anxious, depressed, and worried about how other male supervisors would treat her.

Bridget Todd worked at Daisy Dukes as a server from December, 2016, until February, 2017. Spencer treated Todd similarly to Henard. He rubbed his crotch against Todd's rear end, cornered Todd in the walk-in refrigerator by blocking the doorway, and demanded that she leave her boyfriend for him.

Min worked at Daisy Dukes as a server from January, 2016, until February, 2017. Min and Spencer were involved in a consensual relationship until January, 2017. After they ended their relationship, Spencer treated Min similarly to Todd and Henard. On many occasions, he cornered Min in empty parts of the restaurant to ask her if she missed him, and once he threatened to assault her. Spencer made disparaging comments about other women in front of Min. Min witnessed Spencer harassing Henard and Todd throughout their employment.

All three servers complained to other supervisors and NAKI's owner, Kimsan Yin, about Spencer's behavior. Yin instructed each server to ignore Spencer. He also changed Henard's schedule so that it did not overlap with Spencer's, resulting in a reduction of Henard's hours. Soon after complaining about Spencer's behavior, the three women resigned. Henard resigned in June, 2017, and did not find a new job until August, 2017.

## II. TITLE VII SEXUAL HARASSMENT CLAIM

When a defendant defaults, the defendant admits the well-pleaded factual allegations in the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Thus, in reviewing a motion for default judgment under Federal Rule of Civil Procedure 55(b), courts accept as true plaintiffs' well-pleaded allegations regarding liability. *Id.* Courts must then determine whether the allegations support the relief sought. *Id.*

Title VII declares that employers may not "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1).

> To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer.

*Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). "Workplace harassment that sufficiently alters the terms and conditions of employment is actionable under a 'hostile work environment' theory." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495 n.6 (4th Cir. 2015).

In this case, the EEOC's complaint establishes the elements of sexual harassment. First, the complaint demonstrates that Spencer's conduct was unwelcome because the women consistently rebuffed his advances. Second, the EEOC alleges that Spencer's conduct was based on the servers' sex. Third, the conduct was sufficiently severe because all three women allege that Spencer often made comments about their physical appearances and sexual acts, touched their bodies without permission, and intimidated them to such an extent that they felt forced to quit. Lastly, the complaint indicates that Spencer's conduct was imputable to the women's employer, NAKI. Spencer worked as a manager for NAKI and supervised Henard, Todd, and Min. All three women complained to NAKI's owner about Spencer's conduct. Accordingly, the EEOC sufficiently pleads the elements of sexual harassment as to all three servers.

### III. BACKPAY

The Court now turns to the appropriate relief in this case. First, Henard requests $3,025.16 in backpay for the two months that she searched for work after resigning from Daisy Dukes. Courts remedy a Title VII violation by placing the "plaintiff in a position as near as possible to where she

3

would be now had discrimination not occurred." *Pecker v. Heckler*, 801 F.2d 709, 711 (4th Cir. 1986). Courts may award backpay as part of this relief. 42 U.S.C. § 2000e-5(g)(1). Complete compensation also requires an award of prejudgment interest on the backpay. *Loeffler v. Frank*, 486 U.S. 549, 558 (1988).

In her declaration, Henard asserts that she would have made $1,400 per month in June and July of 2017 if Spencer's sexual harassment had not forced her to quit her job. She bases this estimate on her average monthly gratuity earnings at Daisy Dukes. Henard also requests $225.16 in prejudgment interest for those two months of backpay. The Court finds an award of $3,025.16 for backpay and prejudgment interest reasonable under these facts.

## IV. COMPENSATORY DAMAGES

Additionally, Henard asks for $30,000 in compensatory damages. Todd and Min each request $15,000 in compensatory damages. For a Title VII violation, a plaintiff may recover compensatory damages up to $50,000 if the employer has more than 14 but less than 101 employees.[1] 42 U.S.C. § 1981a(b)(3). "Compensatory damages in connection with a motion for default judgment . . . may be awarded only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *N. Am. Land Corp.*, 2010 WL 2723727, at *2 (internal quotations omitted).

A plaintiff's testimony alone can justify an award of compensatory damages. *See Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1254 (4th Cir. 1996). The testimony, however, must sufficiently articulate the emotional distress in a way that goes beyond conclusory statements. *Id.*

---

[1] The complaint alleges that the defendant had at least 15 employees, so the Court will assume that the defendant falls into this category and that the Court can award up to $50,000. *See EEOC v. N. Am. Land Corp.*, No. 4:09-CV-122, 2010 WL 2723727, at *1 (W.D.N.C. July 8, 2010) (assuming that the defendant employed more than 14 but less than 101 employees when the defendant did not provide proof that it employed over 100 employees).

4

Courts do not require physical symptoms of emotional distress to award compensatory damages, *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305-06 (4th Cir. 1998), but the award "must be proportional to the actual injury incurred," *Taylor v. Republic Servs., Inc.*, 968 F. Supp. 2d 768, 804 (E.D. Va. 2013). To decide if the evidence supports compensatory damages, courts consider:

> (1) the loss of esteem from peers; (2) physical injury resulting from emotional distress; (3) psychological counseling or treatment; (4) loss of income or other pecuniary expense; (5) the degree of emotional distress; (6) the context of the events surrounding it; (7) evidence tending to corroborate the plaintiff's testimony; (8) the connection between the conduct at issue and the distress; (9) medical treatment rendered due to the distress; and (10) mitigating factors.

*Id.*

In her declaration, Henard indicates that she felt anxious, depressed, and paranoid about anyone touching her because of Spencer's actions. She worried that other male coworkers would harass her. She hid in a bathroom to get away from Spencer and asked another supervisor to escort her to her car when he waited for her in the parking lot. Additionally, Min corroborates Henard's claims by saying that she witnessed Spencer harass Henard. Henard left her job at Daisy Duke's because, despite her efforts to stop it, the harassment continued. Her employer's only response—to reduce her hours—made her situation worse. This evidence of emotional distress justifies an award of $30,000 in compensatory damages.

Todd states in her declaration that Spencer berated her with inappropriate comments, molested her, and stopped her from exiting the walk-in refrigerator. Min corroborates Todd's claims by declaring that she witnessed Spencer sexually harass Todd. Todd showed her distress by complaining to the owner and by resigning out of fear that Spencer's conduct would continue. On these facts, the Court finds $15,000 in compensatory damages appropriate for Todd.

Finally, Min says that Spencer treated her similarly to the other two servers. She says that Spencer threatened to assault her and that she resigned because she "felt helpless about the

situation." (Dk. No. 14, Ex. C, at 2.) She witnessed Spencer harass Henard and Todd, compounding her distress. Min's assertions justify an award of $15,000 in compensatory damages.

## V. CONCLUSION

For the foregoing reasons, the Court grants the EEOC's motion for default judgment. The Court will enter judgment in favor of Henard in the amount of $33,025.16, representing $3,025.16 in back pay and $30,000 in compensatory damages, and in favor of Todd and Min for $15,000 each in compensatory damages.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 26 June 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge